IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                           No. CR 15-522 RB

JOSE EFRAIN CAVAZOS,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

Defendant Jose Efrain Cavazos moved to exclude three hearsay statements.  (Doc. 32.)  The Government opposed the motion.  (Doc. 33.)  The Court held a hearing on May 4, 2015.  Having reviewed the parties' submissions and arguments, the Court **GRANTS** the motion in part, **DENIES** the motion in part, and requests additional briefing on the motion to exclude the text message.

I.     **BACKGROUND**

On November 19, 2014, United States Border Patrol encountered six undocumented immigrants near New Mexico State Road 9 and arrested all six for illegal entry.  One of the arrestees, Jose Angel Ortiz-Tafolla, had a cell phone.  Mr. Ortiz-Tafolla gave the Border Patrol agents permission to search his phone and answer any incoming calls.  The phone had only one contact listed, "La Chaparra."  When the phone received an incoming call from La Chaparra, with Mr. Ortiz-Tafolla's consent, a Border Patrol Agent answered the phone and posed as one of the undocumented immigrants.  The Border Patrol Agent, Agent Eduardo Estrada, told the woman on the line that he had been separated from the group and thus evaded arrest.  He requested to be picked up.  During the ensuing three to four phone calls, the Agent spoke to a

female and male voice.  Eventually, La Chaparra agreed to send someone to pick up Agent Estrada, still posing as an undocumented immigrant, at a gas station near Interstate 10.  Border Patrol Agents set up surveillance at the station.

Sometime after midnight, La Chaparra called the incognito agent and told him to look for an older gentleman driving a burgundy Suburban.  She advised him that the driver would be dressed in a black hat, black jacket, jeans, and black boots.  To clarify the details of the pick-up, La Chaparra and the incognito Agent made an additional three or four calls.  In total, the incognito Agent and La Chaparra had seven phone conversations over the course of about four and a half hours.  (Tr. 25:6-15.)

Around 12:30 a.m., Agents saw a burgundy Suburban, driven by Defendant, exit the Interstate and pull into the gas station.  Border Patrol Agent Pedro Guitierrez, pretending to be the stranded immigrant, approached the car and asked if Defendant was there to pick him up. Defendant responded, "Yes."  The Agent asked if Defendant was going to take him to Phoenix. Defendant replied, "No.  We're going to Deming."  Finally, the Agent asked if he needed to pay the driver, and Defendant said, "No. We'll take care of that later."  At that point, the Border Patrol Agent identified himself and arrested Defendant.  Defendant was given his Miranda warning.

During questioning, Defendant first said that he was sent to pick up a friend whose car had broken down.  At some point during the interview—a point of factual contention—Border Patrol read a text message on Defendant's cell phone that said, "Ey dnde estas manda la direccion para ir x ti. Somos Los que lo van a llevar a tucson."  This roughly translates to "Hey where are you send the address to go to you.  We are the ones that will take him to tucson."  The

Border Patrol agent testified that, after showing Defendant this message, Defendant changed his story and confessed that "Angelita" paid him $100 to pick up the man at the gas station.

At the Deming Border Patrol station, Defendant invoked his right to an attorney. According to the Complaint, Defendant declined to sign a consent form permitting agents to search his phone.  (Doc. 1 at 4.)  Defendant was charged in the Indictment with conspiracy to transport illegal aliens, in violation of 8 U.S.C. § 1324. (Doc. 16.)  On April 20, 2015, Defendant filed the current motion to challenge the admissibility of three statements from alleged co-conspirators: the arrested immigrants' statements, La Chaparra's statements made on the phone, and the text message.  (Doc. 32.)

On April 29, 2015, defense counsel and his investigator had an opportunity to examine the phone.  (Doc. 41.)  During this examination, Defendant discovered new material facts, namely, that La Chaparra did not send the text message and that the text message was received on August 8, 2014, four months before the charged conspiracy.  (*Id.*)  On May 1, 2015, Defendant filed a reply brief with new arguments based on the newly discovered facts.  (Doc. 41.)  The Court held a hearing on May 4, 2015.

## II.    DISCUSSION

Before admitting a co-conspirator's statement under Rule 801(d)(2)(E), the Court must be satisfied that there was a conspiracy, that the defendant and declarant were members of the conspiracy, and that the statements were  made in furtherance of the conspiracy.  *See United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995)  During the hearing, the Court found, by a preponderance of the evidence, that there was a conspiracy between Defendant and La Chaparra to transport one undocumented immigrant on the night of November 19 and the early morning of November 20, 2014.  The evidence showed that the undocumented immigrants were in contact

with someone named La Chaparra.  A woman and a man received and placed calls from the telephone number associated with La Chaparra.  On the phone, La Chaparra arranged to transport someone whom she believed to be an undocumented immigrant.  La Chaparra described Defendant in detail as the person who would pick up the incognito agent.  As promised, Defendant arrived to pick up the border patrol agent who was posing as an undocumented immigrant.  This evidence is sufficient to prove a conspiracy by a preponderance of the evidence.

Based on the conspiracy finding, the Court finds that all seven phone calls between La Chaparra and the Border Patrol Agent are admissible in so far as they relate to the conspiracy as described.  At the hearing, Defendant withdrew his challenges to the admission of these statements.  (Tr. 34:5-7; 51:4-7.)  Defendant's motion in limine to exclude these statements is denied.

Relatedly, the Court will permit evidence relating to the six undocumented immigrants to provide the context for the described conspiracy.  However, as Defendant's motion in limine argues, the Government must be careful to not elicit testimonial hearsay statements made by the undocumented immigrants or, for that matter, non-testifying border patrol agents.  *See Crawford v. Washington*, 541 U.S. 36, 52 (2004) (ruling that unless the defendant has an opportunity to confront a declarant, testimonial statements violate the defendant's Sixth Amendment rights).  To that extent, Defendant's motion in limine is granted.

During the hearing, the Court did not rule on the admissibility of the text message.  After the newly discovered evidence and the Government's change in position, Defendant's original arguments regarding the text message are no longer germane.  In his Reply, Defendant argued for the exclusion of the text message on three new grounds: (1) improper purpose; (2) late disclosure; and (3) irrelevance.  (Doc. 41.)

The first argument—improper purpose—is obsolete.  Defendant anticipated that the Government might attempt to introduce the text message as evidence of a similar act under Rule 404(b).  However, the Government does not intend to introduce the text message for any 404(b) purpose.  (Tr. 28:12-19.)

At the hearing, the Court ruled against Defendant's second argument, late disclosure. The Government attempted to document its good faith attempts to coordinate with Defendant. (Tr. 53:16-20.)   Defendant did not question the Government's proffered timeline.   Instead, defense counsel clarified that he would not need a continuance even if the Court decided to permit evidence of the text message.  (Tr. 53:21-54:2.)  The Court does not find cause to impose sanctions under Rule 16(d)(2) from the Federal Rules of Criminal Procedure.

The third and final ground Defendant argues warrants additional consideration. Defendant asserts that, given the date of the text message, it is unrelated to the charged conspiracy and irrelevant.   The Government concedes that the text message, received four months before the charged conspiracy, is not within the scope of the conspiracy.  (Tr. 28:1-3.) Presently, however, the Government intends to offer the text message for a non-hearsay purpose: to show Defendant's state of mind.  (Tr. 28:20-29:2.)

According to Border Patrol, seeing the text message prompted Defendant to change his story and confess the truth.   (Tr. 29:3-14.)   Immediately after his arrest, and before being confronted with the text message, Defendant swore that he went to the gas station to pick up a friend of a friend whose car broke down.  (Tr. 15:13-14.)  After the Border Patrol agent showed Defendant the text message, however, Defendant conceded that he was hired by Angelita to pick up the man at the gas station in exchange for $100.  (Tr. 16:11-17.)  The Government argues that the text message shows Defendant's guilty state of mind.  Although the text is not offered for its

truth, the Government argues, it is relevant because it gives context to Defendant's state of mind and why he changed his story.  (*Id.*)  In response, Defendant argues that even if the text message is relevant for state of mind purposes, it should be excluded as unfairly prejudicial.  (Tr. 42:22-24.)

Before conducting the necessary Rule 403 analysis, the Court needs to clarify the facts related to the text message.  Specifically, the Court needs to know when and why Border Patrol read the text message.  Originally, the Government claimed that Border Patrol saw the text message because La Chaparra sent it shortly after Defendant's arrest.  (Doc. 33 at 5.)  Now, both parties agree that story is inaccurate.  The text message was sent by an unknown party in August 2014.

During the hearing, Border Patrol offered a different story to explain how they intercepted the text message.  Border Patrol arrested Defendant sometime after 12:30 a.m.  The Border Patrol case agent testified that Border Patrol Agent Gutierrez gained possession of the phone because during the field interview, Defendant's cell phone rang.  (Tr. 15:20-21.)  Agent Gutierrez requested and received permission to check the phone to see who was calling.  (Tr. 15:22-25.)  According to the testifying agent, the incoming call was from La Chaparra.  (Tr. 16:4-6.)  While the Agent had the phone in his hand, watching La Chaparra's call, he "c[a]me upon a text message."  (Tr. 15:25-16:3.)  He then showed this message to Defendant and received the alleged confession.  However, this story was undermined during the hearing testimony.

The Federal Public Defender Investigator, called as a witness, testified that he reviewed all the incoming and outgoing calls made on Defendant's phone during the relevant time period.  (Tr. 38:7-10.)  The phone sent, missed, or received four calls between 11:47 p.m. and 12:11 a.m.

(Tr. 38:19-25.)   After 12:11 a.m., there were no additional phone calls.   (Tr. 39:2-4.)   This information directly contradicts the Border Patrol Agent's account that they intercepted a phone call on Defendant's phone sometime after 12:30 a.m.   The Government confirms that the Investigator's timeline supports the theory that La Chaparra or one of her associates called Defendant right before he left for the gas station.   (Tr. 50:9-22.)   The last phone call was made at 12:11 a.m. and Defendant, who lives 20-25 minutes away from the gas station, arrived at the location after 12:30 a.m.   This math adds up.   However, now there is no explanation when or why Border Patrol discovered the text message.

Before it can make a fair Rule 403 assessment, the Court requests additional briefing to clarify the disputed factual situation.   Under the Government's theory, the text message is only relevant for a narrow, factual purpose.   Before ruling on the admissibility of the text message, the Court needs a better understanding of its probative value.   The Court furthers asks the parties to consider *Riley v. California* in their briefing.   *See Riley v. California*, 134 S. Ct. 2473 (2014) (holding that police generally need a warrant before searching arrestee's phones).   Both parties must submit their briefing seven days after the entry of this Order.

## III.   CONCLUSION

Based on a preponderance of the evidence, the Court found that there was a conspiracy between Defendant and La Chaparra to transport one undocumented immigrant on the night of November 19 and the early morning of November 20, 2014.   The Court further found La Chaparra's statements related to this conspiracy, namely the seven phone calls, admissible as co-conspirator's statements and denied Defendant's motion in limine to exclude these statements. The Court will allow reference to the six undocumented immigrants, but grants Defendant's motion to exclude any testimonial hearsay from non-testifying witnesses.   The Court declined to

impose sanctions based on the discovery related to Defendant's cell phone.  Finally, before ruling on the admissibility of the text message, the Court requested additional briefing on when and why Border Patrol found the text message on Defendant's phone.

**THEREFORE**,

**IT IS ORDERED** that Defendant's motion in limine (Doc. 32) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that seven days after this Order, both parties will submit additional briefing on when and why Border Patrol discovered the text message.  The parties should consider *Riley v. California* in their briefing.

**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE